IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Michael F. ROE, Attorney at Law.

Supreme Court

*No. 95–1469–D. Filed October 31, 1996.*

(Also reported in 554 N.W.2d 500.)

PER CURIAM.   We review the report of the referee recommending that the license of Michael F. Roe to practice law in Wisconsin be suspended for six months as discipline for professional misconduct. That miscon-

duct consisted of his failure to act diligently and promptly in representing a client and keep her informed of the status of her legal matter, endorsing the client's name to a money order without authority to do so, failing to advise the client in writing of his receipt of funds belonging to her and failing to cooperate with the Board of Attorneys Professional Responsibility (Board) in its investigation of the client's grievance. We determine that the recommended six-months license suspension is appropriate discipline to impose for that misconduct.

Attorney Roe filed a notice of appeal in this matter but did not file and serve his brief within the applicable time, notwithstanding a notice from the court to do so within five days, failing which the appeal would be dismissed pursuant to Wis. Stat. (Rule) 809.83. He did, however, file an untimely motion for an extension of time to a date specific to file his brief, but when his brief was not filed by that date, the motion was denied. Accordingly, we dismiss the appeal in this proceeding and proceed to consider the matter on the basis of the record and the referee's report.

Attorney Roe was admitted to practice law in Wisconsin in 1977 and practices in Rhinelander. In 1983 the court suspended his license for 90 days as discipline for neglecting two legal matters, lacking adequate preparation in one of them, and repeatedly failing to respond to the Board inquiring into grievances filed by his clients. *In re Disciplinary Proceedings Against Roe*, 115 Wis. 2d 499, 340 N.W.2d 553 (1983). Thereafter, he received two private reprimands from the Board: in January, 1985 for failing to communicate with a client and in November, 1990 for failing to keep a client informed of the status of her case and for failing to cooperate with the Board's investigation by not

responding to two letters from Board staff regarding the client's grievance.

In this proceeding, following a disciplinary hearing, the referee, Attorney John E. Shannon, Jr., made the following findings of fact concerning Attorney Roe's conduct in representing a divorce client, who retained him in November, 1988. During that representation, the client sought Attorney Roe's advice concerning the distribution of proceeds from the sale of her and her husband's home. Attorney Roe advised her to prepare an escrow form and give it to the real estate company handling the sale. The client prepared such a form but Attorney Roe never saw it.

When the home was sold in November, 1989, about the time the divorce was granted, the client received a check from the real estate company for approximately $23,000 as her share of the net proceeds. The client told Attorney Roe the amount was incorrect and that she should have received $9000 to $10,000 more. Attorney Roe asked her for a copy of the escrow form she had prepared and a copy of the closing statement of the sale. In November, 1989, Attorney Roe and the client discussed filing a civil action against the real estate company for having made an improper allocation of sale proceeds that was not in accord with the court's divorce judgment. At the time of the disciplinary hearing, Attorney Roe had neither the escrow form nor the closing statement in his divorce file or in the file relating to the contemplated broker litigation.

The court's findings of fact, conclusions of law and judgment in the divorce action were entered November 10, 1989, but the client did not learn that the matter had been concluded until some time the following spring. When she telephoned Attorney Roe, he told her that the divorce was final but said he did not have

copies of the papers. He said he would obtain copies for her but did not do so. The client ultimately received copies of the papers from the court.

In May, 1991, Attorney Roe met with his client and discussed the status of the divorce, the amount she owed him for his services in the matter, which the client testified was approximately $5000, and the proposed action against the real estate company that Attorney Roe told her he was working on. During that discussion, he offered to reduce his fee in the divorce matter to $3000 and to include in that amount his services for a suit against the real estate company. As in the divorce matter, there was no written fee agreement nor was any part of the arrangement put in writing.

Attorney Roe admitted that he did not do the research he intended to do on the client's claim against the real estate company and never filed an action, although he had promised the client on several occasions he would. He told her in May, 1991, he would file the action in two or three weeks and they would probably be going to court in early 1992 but thereafter failed to advise the client of the status of her claim.

In December, 1991, Attorney Roe received from the client's former spouse a bank money order payable to himself and to his client in the amount of $2334.27, purportedly representing the client's share of the spouse's retirement funds. Attorney Roe endorsed the money order by signing his name and the client's name but without any indication that he was signing it as her attorney or that he had authority to sign her name on it. Attorney Roe told the client in a telephone conversation that he had received the money order and that it might not be for the correct amount she was entitled to. Attorney Roe retained the money order until March 27,

1992, when he deposited it into his law firm's trust account. At the disciplinary hearing, Attorney Roe acknowledged that the funds still remained in that trust account and belonged to the client. He stated that the reason for continuing to hold the funds was that he wanted to resolve the client's claim against the real estate company before sending her the money.

Attorney Roe took no action to determine whether the amount of the money order he received from the client's husband was the correct amount she was entitled to. He never notified the client in writing he had received the money order and did not have her written authorization to endorse her name on it. The referee found that apparently the client impliedly consented to the endorsement after the fact when Attorney Roe telephoned her that he had received it and would hold it while attempting to find out if it was in the correct amount.

On June 30, 1994, the Board asked Attorney Roe for a response to his client's grievance. Attorney Roe did not respond to that request or to subsequent efforts of the Board attempting to get a response. On December 1, 1994, the Board served Attorney Roe with a subpoena to appear at an investigative meeting. At that meeting, Attorney Roe acknowledged that he had no good reason for failing to respond timely to the Board's requests.

On the basis of the foregoing facts, the referee made the following conclusions of law concerning Attorney Roe's professional misconduct. He failed to act with reasonable diligence and promptness in representing this client, in violation of SCR 20:1.3,[1] and did

---

[1] SCR 20:1.3 provides:

**Diligence**

not keep the client reasonably informed of the status of her claim against the real estate company, in violation of SCR 20:1.4(a).[2] Endorsing the client's name on the money order knowing he had no authority to do so prior to depositing the funds into his trust account constituted conduct involving misrepresentation, in violation of SCR 20:8.4(c).[3] By failing to advise the client in writing of his receipt of funds belonging to her, he violated SCR 20:1.15(b).[4] Finally, his failure to cooperate with the Board in its investigation of the client's grievance violated SCR 21.03(4)[5] and 22.07(2).[6]

A lawyer shall act with reasonable diligence and promptness in representing a client.

[2] SCR 20:1.4 provides, in pertinent part:

**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

[3] SCR 20:8.4 provides, in pertinent part:

**Misconduct**
It is professional misconduct for a lawyer to:
. . .
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

[4] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**
. . .
(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[5] SCR 21.03 provides, in pertinent part:

**General principles.**

As discipline for that professional misconduct, the referee recommended that the court suspend Attorney Roe's license to practice law for six months, explicitly taking into account the prior discipline imposed on Attorney Roe. In addition to the license suspension, the referee recommended that Attorney Roe be required to pay the client $2334.27 plus interest at the legal rate dating from March 27, 1992 to date of payment and that he do so within 10 days, failing which his license be suspended until payment is made. In this regard, the referee noted that at the disciplinary hearing in December, 1995, Attorney Roe acknowledged that there was no dispute that his client was entitled to the funds and that she had not received any portion of them. At the hearing he offered to give Board counsel a check in the full amount of those funds but did not do so.

When the referee learned that Board counsel had notified Attorney Roe on February 29, 1996 that the

---

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

[6] SCR 22.07 provides, in pertinent part:

**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

client had not received the funds, the referee wrote to Attorney Roe April 12, 1996 asking that he return the client's funds and advise the referee in writing that he had done so. When the referee filed his report with the court April 18, 1996, Attorney Roe had not responded that he had returned the client's funds.

We adopt the referee's findings of fact and conclusions of law concerning Attorney Roe's professional misconduct and determine that the recommended six-months license suspension is appropriate discipline to impose for it. Attorney Roe's neglect of this client's legal matters and failure to keep her informed not only of the status of those matters but also of his receipt of funds belonging to her which he had obtained by unauthorized endorsement, when considered in light of his prior misconduct for which he was disciplined, constitute serious breaches of his professional duty to his client and warrant commensurate sanction. In addition to the license suspension, we direct that Attorney Roe make restitution to the client as recommended by the referee.

IT IS ORDERED that the license of Michael F. Roe to practice law in Wisconsin is suspended for a period of six months, effective December 5, 1996.

IT IS FURTHER ORDERED that within 60 days of the date of this order Michael F. Roe make restitution as specified in the report of the referee in this proceeding.

IT IS FURTHER ORDERED that within 60 days of the date of this order Michael F. Roe pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael F. Roe to practice law in Wiscon-

sin shall remain suspended until further order of the court.

IT IS FURTHER ORDERED that Michael F. Roe comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.