Mark W. **MUELLER** and James I. Stopple, Petitioners–Appellants,

v.

Michael **SULLIVAN**, Secretary of the Wisconsin Department of Corrections, Respondent–Appellee.

No. 97–1671.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1997.

Decided April 23, 1998.

---

James Geis (argued), Chicago, IL, for Petitioner–Appellant.

James E. Doyle, Roy Korte (argued), Office of the Atty. Gen., Wis. Dept. of Justice, Madison, WI, for Respondent–Appellee.

Before BAUER, COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Wisconsin has enacted the Uniform Securities Act, one section of which is modeled on § 10(b) of the Securities Exchange Act of 1934, an anti-fraud catch-all. Mark Mueller and James Stopple were convicted of violating this statute, Wis. Stat. § 551.41, by inducing clients who sold through their auction house, Farm Loan Services, to accept payment in corporate notes rather than cash. (Technically, they were convicted of engaging in a pattern of securities fraud, in violation of Wisconsin's counterpart to the Racketeer Influenced and Corrupt Organizations Act, Wis. Stat. §§ 946.80–.88, but we disregard this complication.) Farm Loan Services offered three options: cash, unsecured corporate notes, and corporate notes guaranteed by banks. Installment payments via the notes had favorable tax consequences for many clients. Guarantees were costly to both Farm Loan Services (which had to post collateral) and to the clients (who received lower interest rates on the guaranteed notes than the unsecured ones). When deciding whether the guarantee was worth the difference in interest rates, clients might have wanted to know that Farm Loan Services already had a great deal of debt, suffered from cash-flow problems, and was unprofitable, and that transactions with its corporate parent drained off available assets. But Mueller and Stopple, who controlled the business and approved a campaign promoting the unguaranteed notes as "an opportunity to invest in our company", forbade the staff to reveal these facts to client-investors. Early in 1986 Farm Loan Services entered bankruptcy; $1.5 million in installment notes were worthless. The predicate acts of securities fraud concerned 17 notes issued or rolled over in 1985, when the firm was *in extremis* but the client-investors were in the dark, plus one transaction that moved assets from Farm Loan Services to its parent corporation.

Under the Uniform Securities Act, false statements (or the omission of material facts, the form of fraud involved here) in connection with the purchase or sale of securities are crimes if the conduct is wilful. Wis. Stat. § 551.58(1) (taken from § 409 of the Uniform Securities Act). The trial judge instructed the jury:

Wilful ... means only that the defendant knowingly committed the act. charged. Wilful does not mean that the defendant had an intent to defraud or that the defendant had knowledge that the law was being violated.

■ This meant, in particular, that the prosecution did not have to show that Mueller and Stopple knew that corporate notes are "securities" or that the concealed facts were "material" to investors. Conviction could be based on proof that the defendants knew what the investors were and were not being told, accompanied by proof that the withheld information was objectively material. Wisconsin's court of appeals held that this is an accurate interpretation of the statute. *State v. Mueller*, 201 Wis.2d 121, 130–42, 549 N.W.2d 455, 459–64 (Wis.App.), review denied, 204 Wis.2d 318, 555 N.W.2d 123 (1996). The state court observed that this reading is supported by the official commentary to the Uniform Securities Act (Louis Loss & Joel Seligman, I *Securities Regulation* 64 n. 84 (3d ed.1989), reproduces the pertinent treatment), and is consistent with the interpretation given to the word "wilful" in that Act by other states. *E.g., Bayhi v. State*, 629 So.2d 782, 791–92 (Ala.Crim.App. 1993); *People v. Mitchell*, 175 Mich.App. 83, 437 N.W.2d 304, 306–08 (1989); *State v. Fries*, 214 Neb. 874, 337 N.W.2d 398, 405 (1983); *State v. Russell*, 119 N.J.Super. 344, 291 A.2d 583, 588 (App.Div.1972); *State v. Cox*, 17 Wash.App. 896, 566 P.2d 935, 939 (1977). It is also consistent with the definition of "wilful" in the ALI's *Model Penal Code*: "A requirement that an offense be committed wilfully is satisfied if a person acts knowingly with respect to the material elements of the offense, unless a purpose to impose further requirements appears." *Model Penal Code* § 2.02(8).

Seeking a writ of habeas corpus, Mueller and Stopple argued that the due process clause of the fourteenth amendment precludes a state from imposing criminal liability without proving a culpable mental state. Wisconsin replies that Mueller and Stopple forfeited this argument by not presenting it clearly to the state courts, but as such a shortcoming is not jurisdictional, *Trest v.*

*Cain,* —— U.S. ——, ——, 118 S.Ct. 478, 479, 139 L.Ed.2d 444 (1997), and the forfeiture issue is complex, we shall cut to the chase. Many other obstacles impede petitioners' progress, not least the requirement in 28 U.S.C. § 2254(d)(1) restricting collateral review to "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". Because Mueller and Stopple began this proceeding after April 24, 1996, they must show that the Supreme Court has "clearly established" the propositions essential to their position. The district judge declined to issue the writ after concluding that established law favors the state.

■ Petitioners rely on *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), but, as the district court observed, *Lambert* dealt with a statute penalizing inaction (failure to register as a felon after arriving in a new city) by persons who did not suspect that action was required, while securities fraud entails deliberate steps in a highly regulated segment of business affairs. Entrepreneurs know that they must take care when dealing with securities, if only because fraud (including half-truths) is actionable at common law. The state court put it succinctly: "The actor is a cheat and should, without more, have guilty knowledge." 549 N.W.2d at 462. In this court Mueller and Stopple insist that a violation can be "wilful" only if the defendants were aware of their legal obligations, or at least that the state court should have used the rule of lenity to read such a requirement into that ambiguous word. Interpreting state criminal law is a job for state courts, however. Wilful is a word of many meanings, compare *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("wilful" in a particular statute requires proof that the defendant knew the law), with *Browder v. United States*, 312 U.S. 335, 340, 61 S.Ct. 599, 602, 85 L.Ed. 862 (1941) ("wilful" in a different statute "denotes an intentional as distinguished from an accidental act"). See also *United States v. Ladish Malting Co.*, 135 F.3d 484, 487–90 (7th Cir.1998); *United States v. Bryan*, 122 F.3d 90 (2d Cir.), cert.

granted, —— U.S. ——, 118 S.Ct. 622, 139 L.Ed.2d 507 (1997). States may choose among the available meanings; nothing in the Constitution prescribes one nationwide definition of "wilful" in criminal statutes. And the rule of lenity, a canon of statutory interpretation, is for states to use or abjure, as their domestic law requires. States may (and sometimes do) imbue meaning into criminal statutes that as written are empty vessels. E.g., *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). Even in federal courts, where that canon serves to enforce the rule that there are no common law federal crimes, *see United States v. Hudson*, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812), "wilful" is not uniformly understood to require knowledge of the law's requirements. *See Ratzlaf v. United States*, 510 U.S. 135, 141, 114 S.Ct. 655, 659, 126 L.Ed.2d 615 (1994) (cataloging the word's various meanings). What is more, the wilfulness element in § 24 of the Securities Act of 1933, 15 U.S.C. § 77x, the federal statute closest to Wis. Stat. § 551.58(1), has been read just the way the state court read Wisconsin law. *United States v. English*, 92 F.3d 909, 914–16 (9th Cir.1996). It is therefore impossible to say that the Constitution requires state courts to give "wilful" whatever meaning is most favorable to defendants.

■ Thus we come to the only genuine constitutional argument: petitioners' contention that the due process clause establishes in securities fraud prosecutions the same kind of scienter requirement that the Supreme Court understands § 10(b) and Rule 10b–5 to contain. See *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). If this is so, then § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), turns out to be unconstitutional, for *Aaron v. SEC*, 446 U.S. 680, 696–97, 100 S.Ct. 1945, 1955–56, 64 L.Ed.2d 611 (1980), holds that two of the three subparts of this statute, each with parallels to Wis. Stat. 551.41, do not require proof of *scienter*. But a claim that the Constitution requires proof of *scienter* in every criminal case is absurd. Is the maxim that "ignorance of the law is no defense" unconstitutional? Few criminal statutes call for proof that the defendant knew the wrongfulness of his acts.

Most require just what Wisconsin required in this case: proof that the defendant sought to bring about the forbidden consequence, acting intentionally (knowingly) rather than negligently. Some statutes permit convictions for negligent acts where the defendant knew what he was doing but did not want to bring about the proscribed consequence; a few criminal statutes impose strict liability, punishing acts that the defendant did not know about or even tried to prevent. For example, *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), held that the president of a food distributor may be convicted of a criminal offense because rat droppings were found in one of the firm's warehouses, although the president instructed his subordinates to prevent rat infestations. See also *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). If it is possible to have strict criminal liability, or liability for criminal negligence, it is certainly permissible to make "knowledge" a culpable mental state.

States are entitled to give corporate managers incentives to learn the law. No one with half a brain can offer "an opportunity to invest in our company" without knowing that there is a regulatory jungle out there. To say that the Constitution entitles entrepreneurs to propagate deceptive half-truths about their securities unless they have the same level of legal understanding as a practitioner of securities law (maybe more, for some practitioners also have trouble with "materiality") is to create a powerful incentive to go buccaneering. Regulatory statutes commonly serve to induce caution and consultation.

> Hardship there doubtless may be under a statute which ... penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of the conditions imposed for the protection of [the public] before sharing in illicit commerce, rather than to throw the

hazard on the innocent public who are wholly helpless.

*Dotterweich,* 320 U.S. at 284–85, 64 S.Ct. at 138. See also *United States v. Balint,* 258 U.S. 250, 254, 42 S.Ct. 301, 303, 66 L.Ed. 604 (1922), which said of a regulatory statute: "Its manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him." What is true of drugs and guns, *see United States v. Freed,* 401 U.S. 601, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971), is true of securities as well. When promoters do not have the wealth to make good the injuries they inflict, resort to the criminal sanction is essential.

■ Perhaps regulation of securities fraud should be left to the civil law. Perhaps states should hew more closely to *Ernst & Ernst* and *Liparota* than to *Aaron, Park,* and *Dotterweich* when they choose to regulate criminally. As far as the Constitution is concerned, however, proof that the defendants knew what they were doing permits criminal punishment, whether or not the defendants knew or should have known that their acts were unlawful.

AFFIRMED.